arguments not to exceed 15 minutes per side. Mr. Lazarus for the appellant. Good afternoon. May it please the Court, Jeff Lazarus on behalf of the appellant Antun Lewis. With the Court's permission I would request three minutes of rebuttal. Fine. Your Honor, this case represents a manifest injustice as an innocent man has been convicted of a horrible crime that he did not commit. And we request remand on two significant issues. The first issue I would like to address is the Court's holding in bond from the Supreme Court and this Court's holding in United States v. Toviev, which expanded the significant role of federalism in cases. And in this case we request a remand because federalism has been harmed by this holding. Specifically, the United States v. Bond, the Supreme Court held that purely local crimes should not be prosecuted within the federal realm and the federal court should not infringe upon the state's local police power. That has happened in this case. What about the Russell case? Russell dealt with a multifamily home. Russell does deal with the arson statute specifically, but it dealt with a multifamily home and it differentiates itself between this case in which we're dealing with a single family home in which merely it has the ancillary benefit of subsidized federal funding. But both Russell and this case involve rental property, right? That's correct. And we believe that Bond expands or actually limits the holding of Russell. That we believe that Russell now needs to be relooked at in light of the Court's holding in Bond and talks about the limits of federal jurisdiction and federalism concerns. This Court has adopted that and has held that Bond is more than just a holding on its specific facts. In the United States v. Toviev, in which Your Honor Judge Sir Heinrich was a member of that panel. And in that case, this Court held that Toviev is expansive beyond just the narrow holding that seemed at the time from Bond and doesn't just relate to the toxic chemical statute, but also this Court expanded that to the forced labor statute. We are asking this Court for a remand so that the district court can reconsider the federalism concerns in light of Bond and Toviev. We also ask this Court to issue a remand because of the abuse of discretion that was committed in this case by denying the motion for new trial. This is a tragedy. The nine victims that died in this case are a tragedy. But also there's a tragedy because an innocent man has been convicted of a horrible crime and is serving 35 years in prison. Specifically, the district court issued an order granting a new trial. Finding that every aspect of the government's case was dubious, did not have credibility, could not be corroborated, and gave the testimony of the government's main witnesses no weight. Issuing a new trial, a significant holding, a holding though that was affirmed by this Court by 3-0 vote. When we came back before the district court, Mr. Lewis was again found guilty. And again, a motion for new trial was sought as the government failed to introduce any new evidence to support their case. The district court's holding made clear that the government should be given an opportunity to answer the unanswered questions that were before the jury and that gave the court significant concern. The government did not do that. The government presented the exact same case. I thought there was somewhat different evidence between the two trials. That is the government's contention. We do not believe that and we do not agree with that. It would be a fairly easy thing to determine whether there were witnesses who testified at the second trial who didn't testify the first time. That would be up to the court to decide what import to give that evidence. But it's not strictly accurate to say there wasn't any difference. So how can you and the government differ over whether there were new witnesses or new additional evidence or not? Well, I would point to the court's order denying our motion for new trial, specifically on page 53 where the judge does indicate that the trials were somewhat different. However, the district court did not explain how they were different. The district court's order did not identify specific witnesses that were prevalent at the first trial versus the second trial. And the district court did not base its opinion upon any new evidence. But specifically, I want to point to the government's brief on page 30 in which the government tries to mislead this court by pointing out things that they claim were at the second trial but were also at the first trial. Specifically, the government relies on the fact that there were, quote, two cell phones. However, I would point this court to judge the district court's first order granting a new trial. Record 359, page 76, in which the district court clearly says that there was evidence presented at the first trial of a second cell phone. Therefore, the government is trying to mislead this court as to what facts were introduced new at the second trial when they, in fact, were not. But more importantly, the things that the government relies on are not evidence. The government relies on what they call, quote, corroboration for the inmate testimony. The government doesn't explain what the corroboration is. But in reality, there was no corroboration. In truth and in total, the government's case did not answer any of the questions, did not answer any of the concerns about the lack of evidence within the government's case. Marion Jackson and the jailhouse snitches, all of their testimony remained uncorroborated. All of their testimony was, in fact, contradicted by the cell phone records, their testimony that this was set over a drug debt was still contradicted by every single person that remained in this house. And the government cannot provide any answer for the fact that each and every jailhouse snitch only came forward after being in the same pod or the same cell as Paul McKeever. Are you arguing, in effect, that there is not sufficient evidence to convict? Is this a sufficiency of the evidence challenge? Absolutely not. Under a Rule 29 standard, which takes a light most favorable, the government has met its burden. But Rule 33 is significantly different. Rule 33 allows the district court to weigh the credibility of the evidence and weigh the credibility of the witnesses and act as, quote, the 13th juror. But the court of appeals is not supposed to act as the 13th juror, right? We're supposed to defer under essentially a clear abuse of discretion standard to the district judge's determination as to whether or not he is going to act as the 13th juror to overturn the jury's verdict, right? That's correct. We are not asking this court to do a de novo review of the evidence, as that would not be proper. The standard in this case is abuse of discretion. And if we look at the district court's order granting the motion for new trial the first time and we look at the order denying the motion for new trial the second time, the district court goes through all the witnesses, goes through the arguments, and in one case says every aspect of the government's case was dubious, patently incredible, it defied logic, and could not be corroborated. And in the second, the judge simply says this was an issue for the jury to decide. So the first order for a new trial was akin to a motion for Rule 33. And that was affirmed by this court. The second order for a new trial reads more as if it's a Rule 29 argument. Now, that we believe is... Let me ask you this, counsel. Assuming everything you say is correct, can a judge change his mind hearing the evidence the second time? Absolutely. The judge could have issued an opinion saying, now that I have heard the government's witnesses for a second time, I feel that this verdict has confidence. But the judge did not issue that in this case. The judge's opinion, in fact, does not indicate that having heard this a second time, that there's confidence in the verdict. And the district court issued no additional reasons why... Well, he said there's enough for question of fact. Isn't that saying the same thing? I'm sorry, I didn't catch the first part. Didn't he say that this was enough for the jury to decide? And that standard is more akin to a Rule 29 motion for a... Yeah, but isn't that the same as saying I've heard it again and I'm going to let it go to the jury? Your Honor, with all due respect, I wouldn't draw that conclusion that if the district court felt that that was the rationale, then that should have been said. In fact, this court has held that it is an abuse of discretion to not provide a reasoned basis for the opinion. The district court in this case has failed to provide a reasoned basis for the differentiation. Excuse me, but this district judge, on both occasions, carefully and laboriously considered all the evidence. And, I mean, it's hard to know what more we could have asked for than such a carefully reasoned opinion. And, ultimately, he determines that the evidence in support of a not guilty verdict did not clearly preponderate against the verdict. Now, that's what he's supposed to be examining, right? That is the legal test. And your representations make it sound like the district judge engaged in some hasty and not carefully considered deliberations on the case, and that's just not what happened. Your Honor, it's not my contention that the judge was hasty in any way. In fact, I believe that the judge even says how carefully he considered this issue. However, this opinion, in comparison to the first order for a new trial, is uncharacteristically thin as far as the legal analysis and the application of the law. There is no differentiation between how, on one hand, all the government's main witnesses were patently incredible and dubious and had no corroboration, and, in this case, it's merely an issue for the jury. He said a little more than that. I mean, he talked about the weaknesses in the government's case, but at the end of the day, he disagreed with Mr. Lewis's position. What I'm after you after, and I don't mean, is just overcharacterizing what a very conscientious district judge did. I used to be one of those. You know, it strikes a chord when I feel like somebody has come to the Court of Appeals and sort of dumped on the district judge. That is not my intention, and I'm very upset. I know it wasn't your intention. But we read the first opinion, granting a motion for a new trial, and the thoroughness and the thoughtfulness that he is nitpicking each and every one of the government's points and their main witnesses and concludes that they hold no weight. He then issues a second motion for a new trial order in which he still says that there are serious issues of credibility and serious issues that defy logic, but we have a different result. So the district court's characterization of the government's evidence is the same, but we have a diametrically opposed ruling. Maybe the district judge is thinking that two juries have reached the same result and that he as the 25th juror shouldn't be opposed to their result. I'm just speculating if I'm assuming that everything you say is a correct characterization. And if I may answer Your Honor's question? Yes. Your Honor, our issue is not that the jury could not have found this or the judge could not have found this. The reasoning and the opinion, however, does not explain that. And in light of the first opinion, we cannot look at the second opinion in a vacuum. We must look at it in light of the first opinion. And in doing so, this constitutes an abuse of discretion. And for those reasons, we ask the court to reverse the denial of the motion for new trial and remand this case to the district court. Thank you. Thank you. May it please the court, my name is Michael Collier. I'm counsel for Appalee, the United States of America. I will start in the same order that Mr. Lazarus did, start with the bond issue first and then turn to the manifest weight of the evidence argument second. I just want to make two notes on the bond issue. And the first is, as the court pointed out, Russell v. United States squarely addresses this statute, squarely finds that it's a proper exercise under the Commerce Clause to criminalize arson against business property, rental property. Now, Mr. Lazarus noted that in this case, it was a single family property, whereas in Russell, I believe the opinion indicates it was a two-unit apartment. There is no indication in the Supreme Court's opinion that somehow that number is of relevance. What was of relevance was the fact that it was rental property. And the court indicated in that case that it was part of a larger commercial context and that was all that mattered. More significantly, perhaps, is Bond v. United States. To the extent that that case can be read as some kind of an extension that can be relied upon in this case, it's kind of an odd site then at page 2089 of that opinion, and that's 134 Supreme Court, 2077 is the first page. The specific site is at page 2089. And there the U.S. Supreme Court didn't talk about Russell v. United States, but did talk about a different Supreme Court opinion construing the same statute, 18 U.S.C. 844, the same federal arson statute. And in Jones v. United States, the court commented that in a privately owned, owner-occupied residence, that arson statute couldn't reach that kind of conduct. That wasn't the type of commercial property that the statute was designed to meet. And the court held in Bond, looking at the arson statute in Jones v. United States, that the statute was most sensibly read more narrowly to reach only buildings used in active employment for commercial purposes. So if the court meant to somehow imply that maybe Russell v. United States was in jeopardy now, it was odd to use the fact that the arson statute had been upheld as a proper exercise of the Commerce Clause power, and that it was limited to not private residences. It was limited to commercial property. On the manifest weight issue, I'd like to start actually with this court's words at the end of its 2013 opinion upholding the judgment of Chief Judge Oliver. Quote, in light of our deferential review of orders granting motions for a new trial, the district court's thorough and thoughtful review of the evidence, and its superior position to evaluate the credibility of witnesses, we affirm the judgment of the district court. That same standard applies here, and the same result should ensue. That Chief Judge Oliver did not abuse his discretion in finding that there was no basis to grant a third trial on the second motion for a new trial. Well, suppose hypothetically that the first trial had 10 witnesses who said certain things. The district judge grants a new trial. We affirm. Second trial, exact same 10 witnesses say exactly the same thing, and the district judge denies a new trial. Shouldn't we be skeptical in that hypothetical? I understand you're going to say it's not this case, but in that hypothetical, shouldn't we be skeptical about why the district judge flip-flopped? Yes, and that's where you would have to look to the opinion and see if it's the same 10 witnesses, they testified to the same things, what is it that you're seeing differently here? So what is the key difference or two that you think makes your case? I think we list eight different things that we introduced that were either new or that were somehow additional to evidence that we produced in the first trial, and I don't want to go through all eight of those. I'm happy to go through all eight of those. I would like to hit a couple. We're going to pick out one or two, and I understand we should look at your brief for the eight. And these new and additional pieces of evidence came in the context of 47 witnesses in the first trial, 71 in the second. So you have this discrepancy in numbers. We called more witnesses. They called more witnesses. One of the significant witnesses that we called was James Stokes. So one of the issues in the trial was a number of statements that the defendant made, and the defense tried to attack Special Agent Illig's testimony about what the defendant said when he was interviewed approximately 10 days after the fire about where he was the night of the fire. And he described a scene where he went to the Browns, which was this housing project, and then he went to George Hightower's house. James Stokes did not testify in the first trial. He did testify in the second trial that he, as a friend to Sharice Williams, accompanied her to meet with the defendant. It was about one or two days after the fire, so very close in time to the fire, to confront him with the fact that people were saying that he had set this fire. He denied setting the fire, and he said he was at the Fiend's house all night. And that was something the district court found to be different. The district court said it was clearly not true. The cell phone records showed he was not, and it was understood in the context of the record. Everybody understood this, and the court found the Fiend was George Hightower. That was a term that he had used for George Hightower, and so there was no confusion on the fact that his alibi was he was with George Hightower that entire night. The cell phone records showed that was false. In fact, Anton Lewis's own testimony said that was false because he came up with a different alibi in this trial, which is another significant fact. It's not one that we produced, but it was one that was not lost on the district court, that Anton Lewis testified in the second trial, did not testify in the first trial. In fact, at page 16,204 of the record, the court indicated, quote, the most striking difference between Lewis's first and second trials is that Lewis chose to testify on his own behalf at his retrial. Not something we would have necessarily indicated, and I think this gets at, you know, Judge Moore, when you ask about are we skeptical about kind of these differences between the trials when it's tough to really be there and see, you know, on raw numbers, well, there's some differences, there's some additional witnesses. I think that's one area where the court has to give the district judge credit for being there to see Anton Lewis testify, being there to see how rehearsed he was in coming up with a new alibi again that now, after five years of studying cell phone records, was able to kind of contour its way around where his cell phone showed that he was that night. I think in addition to James Stokes' testimony then about an additional false alibi that we didn't have in the first trial, I think the other thing that we did have was additional corroboration for the fact that the defendant sped into George Hightower's driveway at 3.04 approximately a.m. the night of the fire, just moments after the fire. Now, we had the cell phone records in the first trial and in the second trial, and George Hightower testified in both trials. That was when the defendant came speeding into his driveway, his van smelling of gas, and that he knew where that fire had been set and, in fact, that he had corrected George Hightower on where it was. We called two additional witnesses in the second trial that were able to confirm that that time frame fit, that it was not later in the morning, as the defense kept trying to suggest, that this was perhaps as much as an hour and a half after the fire. Instead, Philip Marshall and Mozetta Evans, next-door neighbors to George Hightower, testified they were awakened in that same time frame, 2.55 to 3.00 a.m., banging on the door telling them that Moses Marshall, their relative, that his house was on fire. And both of them testified that when they left to go to that scene, and this fits with all the other evidence in the case as to when Moses Marshall got to the scene and that they went right to the scene when the fire trucks were arriving, they saw the defendant's van in George Hightower's driveway. So, again, it really confirms an additional corroboration for George Hightower's testimony that the defendant came into his driveway moments after the fire, that his van smelled of gasoline, and that he had made this damning admission, we think, and the jury believed, that he corrected him on the location of the fire, that it was not in Decker. He said no. What you're describing all was not in the first trial? George Hightower's testimony was in the first trial, yes. Well, the whole series that you've gone through, you were trying to respond to my question about what was new, and so you're telling me that that was all new. Is that right? The corroboration for George Hightower's testimony and the timing was new. So Philip Marshall did not testify in the first trial to seeing the defendant's van there at approximately 3 a.m. Mozetta Evans did not testify in the first trial, and she said that she saw that van next door in George Hightower's driveway at approximately 3 a.m. Stephanie Mitchell, the other resident in that house, testified in both trials, but what was unique in the second trial was both of those other inhabitants from that next-door neighbor's house saying they saw the defendant's van at approximately 3 a.m. in George Hightower's driveway. Just quickly on a couple points mentioned by Mr. Lazarus, on the second drug phone, there was evidence in the first case. I mean, he's right on that. Marion Jackson and Samantha Collins had testified in the first trial that the defendant carried a second phone and that that could explain why their phone numbers didn't show up in the phone records that we had produced at trial. But there was additional evidence in the second trial, and at pages 16,183 to 16,184, the district court noted there were four or more witnesses who testified in the second trial to that second drug phone, and those were witnesses actually aligned with the defense, Sharice Williams, Sheree Williams, Janine Chisholm, and Joan Davis. All talked in some manner about a second drug phone. So in the first trial, you had this idea, people who were impeached, Marion Jackson, Samantha Collins, people the defense spent a lot of time impeaching, now you had defense witnesses corroborating the fact that there was a second drug phone. The inmate corroboration, it's small. We mentioned it throughout our brief, but one of the things the district court did rely on and specifically mention, at page 16,193 of the record, was that we had an additional witness to confirm Rick Whelan's reluctance to come forward with his information. So the whole defense theory was that these inmate witnesses were somehow being orchestrated by Paul McKeever to come forward with their stories, and that they were going to somehow support him for reasons we're not sure. But in the second trial, Madeline Kamenik, Rick Whelan's then-girlfriend, testified she got a letter from Rick Whelan. He was reluctant to talk about this. This was something he had overheard. And that she's the one who went out and found the ATF agent, located him, and connected him with Rick Whelan in order to provide that information. And the district court noted that. Additional facts that would show their corroboration in the second trial, really it's kind of just the passage of time, two of the inmate witnesses who testified in the first trial were out in the second trial. So Daniel Ideen and Chris Myers testified as civilians. So this whole theory that they were testifying to get some kind of early release, like Anthony Collier, who had a single letter sent to the parole board, these people were out. They didn't need anything from the government. There was still no evidence in the record that we were somehow helping them. But now they were testifying as civilians. And so I think the district court could properly find that's additional corroboration for their testimony. They would come back a second time with nothing to gain, and the evidence showed, in fact, that they had additional things to lose because each one of the inmates talked about the fact that now being labeled as snitches, a couple of them, at least Paul McKeever and Anthony Collier, testified they had additional security risks that caused them to have to be moved after the first trial. So they had additional costs to them. Two of the witnesses were out, and yet they still testified to the same evidence, the same statements that they heard from the defendant. And I think just to highlight one of the points in response to your question, Judge Moore, about the things that were different in this case, the reason why it's so important to give that deference to the chief judge is we talk about the corroboration for George Hightower. There is no way to adequately describe for you or represent in the record George Hightower. He really is kind of an exhibit unto himself. You had to be there to see him and listen to him testify. If you had a recording, I think it would put a different light on what you would think about George Hightower, video even more so. And that's the kind of thing I think that the reason there's an abusive discretion standard, the reason why this court has to defer to the trial judge in those credibility determinations, and I know there's a criticism that there was somehow a lack of law and analysis in his 60-page order here, but he was making credibility determinations, looking at the things that only he could see and compare between those first and second trials, things like George Hightower's testimony, an additional thing that Mr. Hightower talked about, and again this was credited by the district court in its opinion at page 16,199, was that he talked about his reluctance to cooperate with law enforcement. And he talked about it in his testimony, we cite that in our brief, the page number, but again it's the kind of thing that unless you're there to see him testify to that and to see the reluctance on his part to have to testify and cooperate with law enforcement and explain why he didn't initially come forward with some of these details, like smelling gasoline coming out of his friend's van, and he testified that he treated him like family, considered him to be like family. And that was something the district court noted, and that's something that just can't come through on a cold record for this court. And that's why this court has the abusive discretion standard, that's why there is such a heightened level of review in this case. And I remember the last time Judge Sir Heinrich kind of remarking that as a district judge this was something that was kind of unusual that hadn't perhaps happened in his experience or in his direct experience, and it was unusual. It was done the one time, and this court affirmed it because of that heightened standard. And that heightened standard now applies with equal force on the opposite end here when we're asking the court to find no abusive discretion, that the 60-page opinion is no less thorough and thoughtful than the first opinion this court evaluated. The same reasoning that this court quoted in that first opinion applies in this case, and this court has to give that kind of deference to Chief Judge Oliver in his credibility determinations, his ability to look at those witnesses from the first and second trial and evaluate those new witnesses. Just briefly, and this was something noted by the court in its opinion, at pages 538 to 539 of that first opinion, there was in the first trial record a potential explanation for why the defendant's van might smell of gas. George Hightower had talked about giving him some STP or something. In the second trial, that evidence was no longer there, and there was additional evidence presented to try and explain how maybe his van had broken down before, but the district court found that there was no evidence to explain the smell of gas from the defendant's van. For those reasons, we ask this court to affirm the judgment of the district court. Thank you. Your Honor, the government just got up, and they talk about corroboration in such general terms that it really doesn't hold much weight, and in fact the government is cherry-picking the evidence. They bring up James Stokes as somehow he's some smoking-gun type witness. James Stokes was an ancillary witness, and he talked about... The government brings up the fact of going to Judge George Hightower's house shortly after the fire. Anton Lewis admitted that he went to George Hightower's house in the early morning hours of this fire, and he detailed that to the jury, and that was never in question. It wasn't a question about... The fact that Mr. Lewis himself testified in his second trial, wouldn't that be a significant difference, just that the jury and Judge Oliver had the opportunity to evaluate his credibility? It would, and had the judge's opinion in this case said, now that I have had the opportunity to hear from Mr. Lewis, I don't find his testimony to be credible, and therefore I don't think that... We don't have any particular requirements for what's contained in an order on a motion for new trial, do we? That's correct, but if there was a difference in evidence... If he'd written a two-page order, the deficiencies of the order would not be the appellate issue, right? The deficiencies of the reasoning or the actual evidence or whatever might come into play, but we wouldn't be talking about what is required to be in an order. Well, this court is required to be able to do its own independent review to see if there's an abuse of discretion, but we're not saying that this order was too short. The fact that it is 60 pages does speak to the efficacy of the order, but the difference is that this order does not contain any differentiation between what happened at the first trial and what happened at this trial, and if the judge had just said, I find Anton Lewis's testimony was incredible, and therefore that changed my mind, or I found that Judge James Stokes, his testimony was significant, and it changed my mind, the judge would not say that, and we would like... He did say, at 16204, the most striking difference between Lewis's first and second trials is that Lewis chose to testify on his own behalf at his retrial. Now, then he has several pages analyzing Lewis's testimony. He has highlighted Lewis's testimony. Now, I don't know, and you can point me if he said or didn't say Lewis was not credible at all, but the district judge is pointing out the presence of Lewis's testimony and then ends, the jury was presented with sufficient testimony to evaluate Lewis's credibility regarding his account of his whereabouts. May I answer as my time is up, Your Honor? In the first order for new trial, the district court went through each and every one of the government's witnesses and made credibility determinations about them independently. The district court did not make that as far as Anton Lewis, and I think that that is a significant point, that the district court was faced with what it decides as the biggest difference between the two, but does not make a credibility determination saying that this is the reason for the two differing orders, for the two diametrically opposed orders as far as their outcome. Because the district court did not make any such credibility determinations, there is no reasoned basis for the differentiation between the two orders. We believe that this is an abuse of discretion, and we ask for this court to reverse and remand.  Thank you both for your argument. The case will be submitted. Would the clerk...